RECEIVED
NOV 12 2010
AT 8:30_____M
WILLIAM T. WALSH
    CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRANCE ROSS, a/k/a THOMAS JORDAN, | : : : Civil Action No. 08-5763 (GEB) |
| Plaintiff, | : : |
| v. | : **MEMORANDUM OPINION AND ORDER** |
| MERCER COUNTY CORRECTION CENTER, | : : : |
| Defendant. | : **CLOSED** |

It appearing that:

1. This case was originally opened to the Court by Plaintiff's submission of a civil Complaint [1], dated November 20, 2008, which was not accompanied by either the $350 filing fee or an application for leave to proceed in forma pauperis. The form complaint used by Plaintiff included instructions that the complaint must be accompanied by either prepayment of the $350 filing fee or an application for leave to proceed in forma pauperis.

2. At the time he submitted the Complaint, Petitioner was confined at Riverfront State Prison. Briefly, the allegations of the Complaint were that Plaintiff had contracted tuberculosis sometime while confined at Mercer County Correctional Center, between September 22, 2007, and January 15, 2008. Plaintiff alleges that the tuberculosis test administered to him at the start of his confinement at Mercer County Correctional Center was negative, but that he learned he had tuberculosis as the result

of a new test administered at the Central Reception and Assignment Facility on January 18, 2008. The sole named defendant in the original Complaint is Mercer County Correctional Center.

3. As noted on the form complaint used by Plaintiff, a person filing a civil action must either prepay the $350 filing fee or obtain leave to proceed in forma pauperis.

4. If a prisoner seeks permission to file a civil rights complaint in forma pauperis, the Prison Litigation Reform Act requires the prisoner to file an affidavit of poverty and a prison account statement for the six-month period immediately preceding the filing of the complaint. See 28 U.S.C. § 1915(a).

5. By Opinion and Order [2, 3] entered March 4, 2009, this Court administratively terminated this action, advised Plaintiff of the obligation to satisfy the filing-fee requirement, directed the Clerk of the Court to provide Plaintiff with a blank form application for leave to proceed in forma pauperis, and granted Plaintiff leave to move to re-open within 30 days thereafter by either prepaying the filing fee or submitting a complete application for leave to proceed in forma pauperis.

6. The service copy of this Court's Opinion and Order, sent to Plaintiff at his record address, was returned as

2

undeliverable and was received by the Clerk's Office on March 19, 2009.

7. Plaintiff did not file with this Court any notice of change of address as required by Local Civil Rule 10.1(a) ("Counsel and/or unrepresented parties must advise the Court of any change in their or their client's address within five days of being apprised of such change by filing a notice of said change with the Clerk. Failure to file a notice of address change may result in the imposition of sanctions by the Court.")

8. Fifteen months later, on June 21, 2010, the Clerk's Office received a letter [5] from Plaintiff requesting release of his medical records. The return address on the envelope indicated that Plaintiff was then confined at Northern State Prison. In response to this letter, the Clerk of the Court sent Plaintiff another copy of this Court's prior Opinion and Order.

9. On July 19, 2010, this Court received a certified copy of Plaintiff's institutional account statement. The account statement was not accompanied by an application for leave to proceed in forma pauperis, detailing Plaintiff's other assets and liabilities.

10. On July 26, 2010, twenty months after submission of the original Complaint, this Court first received from Plaintiff an application for leave to proceed in forma pauperis. Plaintiff

also submitted a letter request [7] to re-open this matter, which was received on the same day.

11.  This Court must now consider whether to permit Plaintiff to re-open this matter.  Plaintiff did not comply with the instructions on the form complaint with regard to the filing fee requirement, he did not timely comply with this Court's Opinion and Order directing him to satisfy the filing fee requirement, he did not timely notify the Court of his change of address, and he did not timely prosecute this case.  For these failures to comply with this Court's Order and Local Rules, and for his failure to prosecute this administratively terminated case, this Court will deny Plaintiff leave to re-open this matter after this long delay.  See, e.g., Brown v. Brown, 240 Fed.Appx. 1001 (3d Cir. Sept. 13, 2007) (affirming trial court's denial of motion to reopen based upon plaintiff's failure, for a period of less than six months, to comply with court order to pay filing fee or submit application for leave to proceed in forma pauperis).

12.  Moreover, as set forth more fully below, the Complaint fails to state a claim as against the sole named Defendant, and no amended Complaint against any other defendant would relate back, so as to be timely.  Thus, there would be no point to reopening this matter.

4

13. As noted above, the sole named defendant is Mercer County Correctional center. However, a jail is not a "person" amenable to suit under 42 U.S.C. § 1983. See Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-94 (E. D. Va. 1992) (local jail not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county). Accordingly, this action cannot proceed as against Mercer County Correctional Center.

14. In addition, the Complaint fails to state a claim for violation of Plaintiff's constitutional rights, generally. It is not clear from the Complaint whether Plaintiff is a pretrial detainee, a convicted but unsentenced prisoner, or a convicted and sentenced prisoner. Pretrial detainees and convicted but unsentenced prisoners are protected by the Due Process Clause of the Fourteenth Amendment, and convicted and sentenced prisoners are protected by the Eighth Amendment. See Bell v. Wolfish, 441

U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Fuentes v. Wagner, 206 F.3d 335, 341 n.7, 9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). Under either standard, however, he has failed to state a claim.

15. With respect to the Fourteenth Amendment, a liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). Analysis of whether a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

16. Here, Plaintiff has failed to allege any facts suggesting that the system of housing prisoners, as a result of

which he may have been exposed to tuberculosis, amounted to "punishment" in violation of the Fourteenth Amendment. For example, Plaintiff has failed to allege that anybody even had knowledge that some prisoners had active cases of tuberculosis. At most then, the allegations of the Complaint might suggest negligence, which is not a constitutional violation.

17. The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

18. To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at

346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

19. The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

20. A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and

9

"acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." <u>Ingalls v. Florio</u>, 968 F.Supp. 193, 198 (D.N.J. 1997).

21. Here, Plaintiff has failed to allege any facts suggesting that he was deprived of "the minimal civilized measure of life's necessities," or suggesting "deliberate indifference" on the part of corrections officials. Instead, as noted above, the allegations amount to, at most, nothing more than simple negligence.

22. It would be futile to re-open this matter to permit Plaintiff to file an amended complaint; the statute of limitations has expired and any future amended complaint naming a new defendant would not relate back to the date of the original Complaint, a date within the limitations period.

23. Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. <u>See</u> <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); <u>Cito v. Bridgewater Township Police Dept.</u>, 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must

be commenced within two years of accrual of the cause of action. <u>Cito</u>, 892 F.2d at 25; <u>accord</u> <u>Brown v. Foley</u>, 810 F.2d 55, 56 (3d Cir. 1987).

24. Here, according to the allegations of the Complaint, the claim accrued on or about January 18, 2008, when Plaintiff received the results of the tuberculosis test performed at the Central Reception and Assignment Facility. Thus, any amended complaint against new defendants would be time-barred unless it relates back to the original Complaint, dated November 20, 2008.

25. Under the Federal Rules of Civil Procedure, an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 15(c)(1).

26. Here, the history of this litigation compels the conclusion that there would be no sound basis for allowing a future amended complaint to relate back to the date of the original pleading under Rule 15(c)(1). The Complaint was submitted to this Court after Plaintiff left Mercer County Correctional Center. The Complaint was never served and no discovery took place. Thus, there is no reasonable basis to conclude that any person at Mercer County Correctional Center "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Moreover, there is no evidence of "mistake" as to the proper party's identity, but rather a simple failure to name the liable party under the law. Cf. Krupski v. Costa Crociere, S.p.A., 130 S.Ct. 2485 (2010) (involving confusion as to the proper corporate party). By the same reasoning, there is no sound basis to conclude that another potential defendant "received such notice of the action that it will not be prejudiced in defending on the merits." For all the foregoing reasons, it would be futile to permit this matter to be re-opened, for the filing of a future amended complaint that is time-barred. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

IT IS, therefore, on this 12th day of November, 2010,

ORDERED that Plaintiff's Letter request to re-open this matter is DENIED; and it is further

ORDERED that the application for leave to proceed in forma pauperis is DENIED as MOOT; and it is further

ORDERED that the docket on this matter shall remain CLOSED.

_____
Garrett E. Brown, Jr.
Chief Judge
United States District Court

13